**Robert W. BURUD, Kristin Dennis, Fred Greenlee, Philip Haluptzok, Ruth Haynes, John Hotchkiss, Yvonne Shaver, and William J. DeVries, Plaintiffs,**

v.

**ACME ELECTRIC COMPANY, INC., an Alaska corporation, Gerald M. Evans, Don C. Chandler, Richard L. Thomas, David Hudson, Jerry Kadatoni, Ken Lohr, Paula Hutchinson, Rusty Lowery, Glen McDonough, Paul Neumann, Howard Richardson, Howard Cook, Kris Dennis, Fred Montgomery, John Thomas and Jack West, Defendants.**

No. F81–037 CIV.

United States District Court,
D. Alaska.

June 22, 1984.

---

Joseph L. Paskvan, Rice, Hoppner, Brown & Brunner, Fairbanks, Alaska, for plaintiffs.

Charles E. Cole, Fairbanks, Alaska, for defendants.

## MEMORANDUM AND ORDER

### VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on plaintiffs' motion for summary judgment and defendants' motion for partial summary judgment.

### I. Jurisdiction

Venue lies in this court and jurisdiction is proper under 29 U.S.C. § 1132(e) (1982).

### II. Motions for Summary Judgment

The standard for determining each side's summary judgment motion is the same: Summary judgment may be granted if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the non-moving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *International Ladies Garment Workers Union v. Sureck*, 681 F.2d 624, 629 (9th Cir.1982). The moving party has the burden of showing that no genuine issue of material fact exists. *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

Plaintiffs' motion for summary judgment seeks an order imposing liability upon defendants Acme Electric Company, Inc., Gerald M. Evans and Don Chandler for violations of fiduciary duties and other statutory mandates arising from the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1982) (ERISA) and for violations of the fiduciary duties of trustees at common law. Because this motion addresses fewer than all defendants and does not entirely address the issue of damages, it shall be deemed one for partial summary judgment pursuant to Fed.R.Civ.P. 56(c). Defendants' cross motion for summary judgment seeks dismissal of the claims asserted in Counts V–VII of plaintiffs' first amended complaint.

### III. Plaintiffs' Motion

#### a. Background.

The plaintiffs in this lawsuit are present and former employees of Acme Electric Company, Inc. (Acme) and beneficiaries of certain employee retirement benefit programs established pursuant to ERISA. Plaintiff William J. DeVries is a former officer of the corporation. His legal status as a member of the corporation's board of directors and as a trustee of the employee stock option plan (ESOP) and Money Purchase ESOP (MPESOP) is disputed. The defendants whose liability this motion seeks to establish are Acme, Gerald Evans and Don Chandler. Evans and Chandler, at all times relevant, were officers and directors of Acme and trustees of ESOP and MPESOP.

In 1970, the Acme board of directors (Chandler, Evans and DeVries) established a profit sharing plan (PSP) (Adm. Nos. 4, 6; Ex. 2). Acme contributed approximately $250,000 to the PSP from 1970 through July 31, 1975. *Id.* On July 31, 1976 Acme converted its profit sharing plan into an ESOP. The ESOP plan authorized the trustees to invest up to 100% of fund's assets in Acme securities. *See* Employees Stock Option Plan (Plan), § 10.3, Adm. No. 21. Following the conversion of the PSP to an ESOP, a group of Acme employees and plan beneficiaries met with Chandler, Evans and DeVries. DeVries Aff. ¶ 6; Chandler Aff. ¶ 5. The purpose of the meeting and the nature of the message communicated by the beneficiaries to their trustees is in dispute. *See* DeVries Aff. ¶ 7; Chandler Aff. ¶ 5. Plaintiff DeVries claims that the meeting aired the beneficiaries' objections to the authority given in Plan ¶ 10.3 to invest funds accumulated under the PSP in employee securities and further claims that the trustees then promised to amend the ESOP to permit segregation and separate administration of PSP-era funds. Chandler claims that no such statement or promise was made. Chandler Aff. ¶ 5.

On December 6, 1977 the directors amended § 10.3 to provide that PSP-era

contributions would be segregated from ESOP contributions and administered according to the terms of the prior PSP. The amendment specifically forbade investment of PSP-era assets in Acme securities. Adm. No. 17, Ex. 7. Beneficiaries received notice of this amendment via an amendment to the Summary Plan Description (SPD), Adm. No. 29, Ex. 13. On December 8, 1977, § 10.3 was amended again. The second amendment in effect rescinded the first amendment, thereby restoring to the trustees the authority to invest PSP-era funds in Acme securities. Adm. Nos. 26–28; Ex. 12. According to defendants, the first amendment to § 10.3 was initiated by a consultant hired by the trustees. Chandler Aff. ¶ 6. No notice of the second amendment was given to the plan's participants. No amendment to the SPD reflecting this change was circulated. DeVries Aff. ¶ 11.

DeVries wrote letters to Evans and Chandler on August 4, 1978 resigning as vice-president of Acme and as an employee of Acme. See Pl. Reply, Ex. A; DeVries Aff. ¶ 14. On September 1, 1978 Chandler and Evans convened a meeting of the ESOP trustees. DeVries did not attend. Styling themselves as "the remaining two trustees," Chandler and Evans resolved to remove DeVries as a trustee.

The plan does not expressly require actions taken by the trustees to be approved by unanimous vote nor does the plan authorize action by majority approval. The PSP which was converted into the ESOP provided for majority decision-making. See Pl. Ex. 1, § 2.03. Adm. No. 47, Ex. 18. Section 10.15 of the ESOP provides, in part: "The trustee may be removed by the Employer at any time upon sixty (60) days notice in writing to the trustee." Adm. No. 17, Ex. 7. Acme is the employer. Id. The Acme board of directors, again without DeVries presence, purported to remove DeVries as a trustee on March 13, 1979.

Chandler claims that he spoke with DeVries periodically following his resignation and that DeVries never indicated that he "desired to continue participating as an ESOP trustee" nor inquired into the management of the fund. Chandler Aff. ¶ 8. Chandler and Evans considered DeVries' resignation from the employ of Acme and as an officer of Acme as a resignation also from the trusteeship of ESOP, its management committee and from the board of directors of Acme. Id.

At the same September 1, 1978 meeting Chandler and Evans "resolved that the Acme Electric Employee Stock Option [sic] Trust purchase shares of Acme Electric Company stock in value equal to $243,-917.91." Adm. No. 47, Ex. 18. On January 26, 1978, $243,917.91 was transferred from ESOP to Acme in exchange for 9,436 shares of Acme common stock. Adm. Nos. 46, 61, 62. The transferred sum was equal to the entire balance of PSP funds accumulated prior to the conversion in 1976 to ESOP. Id. The appraised value of the stock at the time of transfer was $25.85 per share, down from the $37.95 appraisal one year earlier. Id.

The Acme directors adopted a second employee benefits program on July 31, 1976. This second plan, known as the Acme Money Purchase Employee Stock Option Plan (Money Purchase ESOP) has as its distinctive feature a mandatory annual contribution by its sponsor. Adm. No. 16, Ex. 6. For the purposes of this motion, plaintiffs concede that a meeting of the Acme directors occurred on July 18, 1976. DeVries states that he did not attend this meeting and the minutes indicate his absence. DeVries Aff., ¶ 18, Adm. No. 98, Pl. Ex. No. 27. According to the minutes, the Acme directors resolved at the meeting to take steps to terminate the Money Purchase ESOP effective as of August 1, 1977. On March 13, 1979 the Money Purchase ESOP was terminated effective July 31, 1978. (Adm. No. 43, Ex. 16) DeVries was not at the March 13, 1979 meeting.

### b. Plaintiffs' Claims

Plaintiffs challenge the acts of trustees and directors Chandler and Evans on several grounds.[1]

#### (i) Stock Purchase a Nullity Absent Unanimous Agreement of Trustees

Plaintiffs argue that the decision of Evans and Chandler at the September 1, 1978 ESOP meeting to purchase Acme stock with PSP-era funds was a nullity since it was an act taken without the unanimous consent of all trustees. The first issue raised by this claim is whether DeVries was a trustee of ESOP on September 1, 1978. If DeVries had resigned or been removed, the remaining trustees Chandler and Evans acted unanimously.

#### (a) Trustees' Resolution Removing DeVries

■ The court concludes as a matter of law that the September 1 trustees' resolution by Chandler and Evans removing DeVries as a trustee was of no effect, since the power to remove a trustee did not rest with the trustees.[2]

■ The court further concludes that the Acme directors' resolution of March 13, 1979 did not ratify the earlier removal of DeVries as an ESOP trustee by his co-trustees. The doctrine of ratification is unavailable to the directors for two reasons. First, a board may only ratify acts which could have been authorized in the first place. *Boyce v. Chemical Plastics*, 175 F.2d 839, 842 (8th Cir.1949); *see also* 2A *Fletcher Cyc. Corp.* § 752 (Perm Ed.1982 rev.). The provisions of the plan vest sole authority for the removal of the trustee in the employer. Accordingly, since the board could not have authorized the trustees to remove DeVries without first amending the plan, its attempt to ratify the act is of no effect. *Birmingham v. Sogen Swiss Int'l. Corp.*, 529 F.Supp. 86 (S.D.N.Y.1981) does not hold to the contrary. In that case, the parties did not dispute that the "old committee" charged with administering the retirement plan had the authority to interpret the plan, although not to amend it. *Id.* at 88–90. Thus, the court is not impressed by the dicta in *Birmingham* suggesting that a corporation can ratify the *ultra vires* acts of the plan committee, first, because it is not evident that the committee in *Birmingham* acted *ultra vires* and second, because the authorities cited by the *Birmingham* court in support of the proposition offer, in fact, no support.

Second, ratification permits the principal to validate the acts of his agent. The ESOP trustees are not the agents of the employer. I Scott on Trusts (3d Ed.1967) § 8.

Defendants argue that notwithstanding the ineffective acts of the trustees in removing DeVries and of the board in attempting to ratify the act, DeVries should be estopped by his conduct to deny that he had, in fact, resigned from his trusteeship. Even assuming that defendants have raised questions of fact concerning DeVries' conduct in relation to his duties as a trustee, the court concludes that the remaining plaintiff-beneficiaries under the plan are not estopped as a matter of law from asserting that DeVries was one of three ESOP trustees in September 1, 1978.

Since DeVries had not been properly removed as a trustee and since plaintiffs are not estopped, for the purposes of this motion, to argue his continuity in that capacity despite the resignation from other positions, the court must decide whether the decision of trustees Chandler and Evans to

---

**1.** At oral argument, plaintiffs argued that the ESOP purchase of employer stock violated Treasury regulations since the value of the stock was not determined as of the date of the transaction. The question has not been briefed and the court declines to address it.

**2.** Section 9.1 of the ESOP plan provides:
9.1 *Allocation of Responsibility Among Fiduciaries.* The fiduciaries shall have only those specified powers, duties, responsibilities, and obligations as are specifically given them under this plan and trust. In general, *the employer shall have the ... sole authority to appoint and remove the trustee....*

Section 10.15 of the plan further provides, in part:
10.15 *Removal, Resignation and Appointment of Successor Trustee:* The trustee may be removed by the *employer* at any time upon 60 days notice in writing to the trustee.

purchase Acme stock was void for lack of unanimity.

### (b) ERISA provisions.

■ 29 U.S.C. § 1105(b)(1) provides, in part:

[I]f the assets of a plan are held by two or more trustees—

. . . .

(B) they shall jointly manage and control the assets of the plan, . . .

Plaintiffs argue that this subsection of ERISA merely codifies the unanimity rule of trusts, a common law principle holding that the discretionary powers of a trust may only be exercised by all of the trustees in unanimity. *See generally* RESTATEMENT (Second) OF TRUSTS, § 194 (1959); Bogert, TRUSTS AND TRUSTEES, § 554 (2d ed.). For the following reasons the court disagrees with plaintiffs' assertion that § 1105(b)(1)(B) codifies the common law unanimity rule of trust law. First, the statutory requirement that trustees jointly manage and control the assets of a trust does not, on its face, preclude the management of a trust from proceeding by majoritarian principles. Second, when § 1105(b) is read in its entirety, it is apparent that the purpose of the subsection is to provide a framework for the allocation of trustee responsibilities and a corresponding limitation of liability for breaches by a co-trustee of responsibilities properly allocated. Indeed, to read the introductory clause of subsection (B) as a codification of the unanimity rule renders the preceding subsection (A) less meaningful.[3] If, for example, a co-trustee can prevent the trustees from taking action by the veto power of his vote, what additional "reasonable care" would be necessary to prevent a breach? Third, plaintiffs have not resolved an apparent

inconsistency with § 1102(a)(1) which provides that the trust plan shall name one or more fiduciaries "who jointly *or* severally shall have authority to control and manage the operation and administration of the plan." At least one of the reasonable interpretations of that provision is that all trust management decisions need not be made jointly.

In short, Congress's intent with respect to rule by trustee majority or consensus is not entirely clear in the statute. Recourse to legislative history, however, supplies a more satisfactory answer.

### (c) Legislative History.

In a committee report on Senate Bill 4, the Senate Committee on Labor and Public Welfare, discussing the fiduciary's responsibilities, writes:

Where two or more fiduciaries manage a fund, each must use care to prevent a co-fiduciary from committing a breach or to compel a co-fiduciary to redress a breach. *Plan business is to be conducted by joint fiduciaries in accordance with the governing instruments of the plan, or in the absence of such provisions by a majority of fiduciaries* and a fiduciary who objects in writing to a specific action and files a copy of his objections with the Secretary is not liable for the consequences of such action.

S.R. No. 93–127, 93rd Cong., 2d Sess. 33, *reprinted in* LEGISLATIVE HISTORY OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, 587, 619 (1976) (*Legislative History*) *and in* 1974 U.S.CODE CONG & AD NEWS 4838, 4869. Sections 15(d) and (e) of S.4, which the explanatory comments above addressed, became § 511 of H.R. 2 as amended by the Senate.[4]

---

**3.** 29 U.S.C. § 1105(b)(1)(A) provides:

(1) Except as otherwise provided in subsection (d) of this section and in section 1103(a)(1) and (2) of this title, if the assets of a plan are held by two or more trustees—
(A) each shall use reasonable care to prevent a co-trustee from committing a breach;

**4.** Sections 15(d) and (e) provide:

"(d) Any fiduciary who breaches any of the responsibilities, obligations, or duties imposed

upon fiduciaries by this Act shall be personally liable to such fund for any losses to the fund resulting from such breach, and to pay to such fund any profits which have inured to such fiduciary through use of assets of the fund.

"(e) When two or more fiduciaries undertake jointly the performance of a duty or the exercise of a power, or where two or more fiduciaries are required by an instrument gov-

Sections 15(d) and (e) of S.4 do not, however, appear in the conference substitute enacted into law. Consequently the court's reliance on committee comments to provisions not enacted in their original form must be restricted. Nevertheless, the court finds the comments illustrative of legislative intent. The fiduciary responsibility provisions of the House-passed bill and the conference substitute enacted as Pub. Law 93–406 do not differ in any significant respect from S.4. *See* H.R. 2, 93rd Cong. 2d Sess. § 111 at 57, *reprinted in Legislative History*, 3898, 3954–55.[5] Moreover, nothing appears in the legislative history of the conference substitute to suggest that Congress abandoned the intent it expressed with respect to S.4. *See generally* SUMMARY OF DIFFERENCES BETWEEN THE SENATE VERSION AND THE HOUSE VERSION OF H.R. 2 TO PROVIDE FOR PENSION REFORM 93rd Cong., 2d Sess. (Committee Print) Vol. 3 at 12–13, *reprinted in Legislative History*, 5249, 5262–64.

A further consideration supports the court's conclusion that majoritarian trustee

decision making is permissible under ERISA in the absence of contrary provisions in the plan. Both sides agree that Congress intended to incorporate into ERISA the common law of trusts as it has evolved. *See Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir.1978). Although it is unclear whether rule by the majority of a trustee committee has become the rule of decision in the majority of American jurisdictions, that rule is clearly the modern trend and is better suited to the management of business trusts in general and employee pension and welfare trusts in particular. *See generally* UNIF. TRUSTS ACT § 11, 7A U.L.A. 398 (1984); *cf. American Security & Trust Co. v. Frost*, 117 F.2d 283, 291–92 (Rutledge, J. dissenting) (*criticizing rule of unanimity*). Accordingly, the court concludes that trustee majority decision-making is permissible under ERISA in the absence of contrary provisions in the plan. In this case, the ESOP plan contained no provisions barring a majority of trustees from acting to affect the trust. As a consequence, summary judgment on plaintiffs' claim that the decision by Chandler and Evans on July 18,

---

erning the fund to undertake jointly the performance of a duty or the exercise of power, but not otherwise, each of such fiduciaries shall have the duty to prevent any other such cofiduciary from committing a breach of responsibility, obligation, or duty of a fiduciary or to compel such other cofiduciary to redress such a breach, except that no fiduciary shall be liable for any consequence of any act or failure to act as a cofiduciary who is undertaking or is required to undertake jointly any duty or power if he shall object in writing to the specific action and promptly file a copy of his objections with the Secretary.

S.4, 93rd Cong., 2d Sess. § 15(d), (e) (1974) *reprinted in Legislative History*, at 2062.

**5.** § 111(e) provides:

(e) All assets of any employee benefit plan (other than any contract for the payment of annuities which is guaranteed by an insurance company and not issued to a trustee of the plan) shall be held in trust by one or more trustees. Such trustee or trustees shall either be named in the trust instrument or appointed by the administrator or administrators and, upon acceptance of their appointment, shall have exclusive authority and discretion to manage, and exclusive control of, the assets of the plan (subject to proper directions of the

administrator which are made under the terms of the plan and which are not contrary to this title and except to the extent that authority to manage, acquire, or dispose of assets of the plan is delegated to one or more investment managers). If the assets of a plan are held by two or more trustees—

(1) each shall use reasonable care to prevent a co-trustee from committing a breach notwithstanding language to the contrary in the trust agreement; and

(2) they shall jointly manage and control the assets of the trust, except that nothing in this paragraph (2) shall preclude any agreement authorized by the trust instrument allocating specific responsibilities, obligations, or duties among trustees, in which event a trustee to whom certain responsibilities, obligations, or duties have not been allocated shall not be liable by reason of this paragraph (2) either individually or as a trustee for any loss resulting to the fund arising from the acts or omissions to act on the part of another trustee to whom such responsibilities, obligations, or duties have been allocated, unless the trustee to whom the responsibilities, obligations, or duties were not allocated participated knowingly in the activities constituting a breach of the specific responsibilities, obligations, or duties allocated to any other trustee.

1978 to buy Employer stock is a nullity for want of unanimity is denied.

### (ii) Breach of ERISA § 1104 Fiduciary Duties

Plaintiffs' second claim is that Chandler and Evans breached duties imposed upon them as ERISA fiduciaries. There is no doubt that ERISA creates personal liability for fiduciaries who breach their duties nor that Chandler and Evans were ERISA fiduciaries. *See* 29 U.S.C. § 1002(21)(A), 1109(a).

### (a) Self-dealing

Plaintiffs argue that Chandler and Evans breached fiduciary duties by engaging in a self-dealing transaction with the plan, as prohibited by § 1106(b)(1).[6] The basis of this argument is that since Chandler and Evans acted without unanimity in purchasing the stock, they are deemed to act in individual capacities rather than as fiduciaries. *See* Pls.' Reply at 12. Since Chandler and Evans are deemed to act as individuals, the argument continues, they have necessarily engaged in self-dealing. This argument lacks merit as the court concluded above that neither the trust instrument nor ERISA requires the trustees to act with unanimity.

### (b) Prudent Man Standard of Care

Plaintiffs next claim that Chandler and Evans breached fiduciary duties set out in 29 U.S.C. § 1104(a)(1).[7] The gist of this argument is that Chandler and Evans breached their duties of strict loyalty to the plan participants by allowing a conflict of interest to interfere with their prudent administration of the plan.

§ 1104 embodies a carefully tailored law of trusts, including the familiar requirement of undivided loyalty to beneficiaries and the prudent man rule. *Eaves v. Penn*, 587 F.2d at 457.

Indeed, ERISA makes more exacting the requirements of the common law of trusts with respect to employee benefit trust funds. *Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir.1983).

Plaintiffs rely heavily on *Donovan v. Bierwirth*, 680 F.2d 263, 64 ALR Fed. 580 (2d Cir.1982). In *Bierwirth*, as in the case *sub judice* the ESOP trustees were also corporate officers and directors of the employer. *Bierwirth*, 680 F.2d at 267. During a takeover bid by LTV Corp. (LTV), the trustees in *Bierwirth*, in order to prevent a majority of the common stock from being purchased by the rival LTV, approved the purchase by the plan of $44,000,000 worth of employer stock. *Id.* at 269. After a hearing, the district court preliminarily enjoined the trustees from taking further action respecting employer stock. *Donovan v. Bierwirth*, 538 F.Supp 463, 476 (E.D.N.Y.1981). The lower court found that the trustees failed to discharge their duty of prudence to fully investigate the propriety of the investment of funds in employer stock and were unable to exercise independent judgment in the sole interest of the plan's participants. *Id.* at 471.

---

**6.** "A fiduciary with respect to the plan shall not—
 (1) deal with the assets of the plan in his own interest or for his own account, ..."

**7.** 29 U.S.C. § 1104(a)(1) provides:
 Fiduciary duties
 (a) Prudent man standard of care
 (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
 [A] for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan;

(B) with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

In affirming the grant of injunctive relief, the Court of Appeals stated:

> Although officers of a corporation who are trustees of its pension plan do not violate their duties as trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interests of participants and beneficiaries simply because it incidentally benefits the corporation or, indeed, themselves, their decisions must be made with an eye single to the interests of the participants and beneficiaries. Restatement of Trusts 2d § 170 (1949); II Scott on Trusts § 170 at 1297–99 (1967) (citing cases and authorities); Bogert, The Law of Trusts and Trustees § 543 (2d ed. 1978). This, in turn, imposes a duty on the trustees to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan.

According to the Court of Appeals, the trustees should have realized that, since their judgment with respect to the purchase of employer stock could scarcely be unbiased, they were bound to take greater precautions than those taken. *Id.* at 276.

Plaintiffs argue that Evans and Chandler were unable to exercise objectively and independently their judgment solely in the interests of the plan participants. The following facts are undisputed: two years of corporate losses and declining gross revenues concerned Chandler and Evans about the time when, as trustees, these defendants authorized the purchase of Acme stock. *See* Admission Nos. 66–69. The appraised value of Acme stock declined steadily from a high value in 1976 of $55.74 per share to $25.85 per share at the close of the fiscal year 1978. *See* Adm. 59. The trustees were expressly aware that the value of the employer's stock was declining. *See* Minutes of ESOP Trustees, September 1, 1978 (Plaintiffs' Exhibit 18). The deci-

sion to invest in employer stock was made without the benefit of the advice of independent counsel. *See id.* Relying on *Donovan v. Bierwirth*, plaintiffs urge this court to conclude as a matter of law from these undisputed facts that defendants Chandler and Evans have breached their fiduciary duties.

■■■■■ Defendants argue in opposition that summary judgment is inappropriate since the facts and inferences therefrom must be taken in the light most favorable to defendants and taken in such a light, a fact question is raised regarding whether the trustees properly discharged their fiduciary obligations. The facts upon which defendants rely are deposition statements allegedly made by defendant Chandler that he had been assured that a major construction project—a natural gas pipeline from the North Slope—was sure to go through and that Acme Electric would be a major sub-contractor on that project. From that information defendants claim Chandler reasonably believed that the purchase of Acme stock was a good investment. *See* Defendants' Opposition Brief at 26. Defendants, however, have failed to place these depositions or excerpts from them into evidence. The inclusion in a legal memorandum of a quotation from a deposition is not admissible evidence on a motion for summary judgment. Fed.R.Civ.P. 56(e); *see Feldman v. Simkins Industries, Inc.*, 679 F.2d 1299, 1305 (9th Cir.1982). When a moving party has sustained its burden of showing the non-existence of genuine issues of fact, the burden shifts to the non-moving party to produce significant probative evidence tending to support its theory of the case. *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1320–21 (9th Cir.1981). To the extent that burden has shifted in this case, defendants have failed to produce evidence of a factual controversy.[8]

---

**8.** Defendants also inexplicably state that neither plaintiffs nor defendants suggest that they are entitled to a summary judgment concerning this issue and that they agree that a fact question precludes summary judgment. *See* Defendants' Reply on Cross-Motion, at 7. Plaintiffs, however, have consistently argued the appropriateness of summary judgment on this issue.

■ Defendants further argue that because a fact finder, considering the aims and purposes of the ESOP trust, would recognize a strong policy and preference in favor of investment in employer stock, the actions of defendant trustees should benefit from an inference that they acted with prudence. This argument lacks merit. There are no statutory or federal common law presumptions cloaking the fiduciary's act in prudence. To the contrary, ERISA invites the closest scrutiny of a trustee's action. *Bierwirth*, 680 F.2d at 272, n.8. Moreover, the non-moving party benefits from inferences drawn from facts. In this instance, the fact that the trustees invested the entire ESOP funds in Employer stock does not give rise to an inference that the trustees acted with prudence. No other facts allowing such an inference have been established.

■ Were these facts before the court after trial or by stipulation, the court would not hesitate to conclude that trustees Chandler and Evans breached their fiduciary obligations under the prudent man standard of care. The trustees acted in an obvious situation of conflicting interests without the benefit of independent counsel and with a result which strongly indicates that the trustees did not discharge their duties solely in the interests of the beneficiaries. On summary judgment, however, the court must carefully scrutinize the moving party's burden. In this regard, plaintiffs have overestimated the precedential value of *Bierwirth v. Donovan*. That decision came on appeal from a grant of preliminary injunction after hearing before the district court. Consequently, the court of appeals' analysis and application of the legal standards for ERISA fiduciaries rests upon a factual foundation

more fully developed than that now before the court.

■ In sum, the plaintiffs have failed to establish the non-existence of any genuine issue of material fact on the issue of the trustees' breach of fiduciary duties resulting from the Acme stock investment. Even though the evidence of a breach is persuasive and even though this action appears to be in equity in which the court shall be the eventual finder of fact,[9] the court has not been convinced that this issue is in a proper posture for summary disposition.

### (iii) Failure to Report Material Modifications of Plan

29 U.S.C. § 1022(a)(1) obliges the administrators of an ESOP to furnish participants a summary of any material modification in the terms of the plan. It is undisputed that defendants Chandler and Evans were plan administrators.[10] It is also undisputed that the administrators of the ESOP did not furnish the participants with a summary description of the second amendment to § 10.3 of the plan. The first amendment to § 10.3, restricting investment of PSP funds, was reported to the participants. The second amendment reinstated authority to invest PSP funds in Acme stock but was not reported.

Defendants argue first that the change in the trustees' investment authority was not a material modification subject to the disclosure requirements of §§ 1022 and 1024; second, that even if a violation occurred, only the Secretary and not a participant has a cause of action to enforce the disclosure provisions; and, finally, that the only remedy available is to order a proper plan summary to be provided.

**9.** The court notes that plaintiffs have requested and defendants assumed a trial by jury in this case. Plaintiffs have alleged jurisdiction based on ERISA, Pub. L. 93–406 § 502(e)(1) and (f), 29 U.S.C. § 1132(e)(1) and (f) for an action brought under § 502(a)(3), 29 U.S.C. § 1132(a)(3).

§ 502(a)(3) is by its own terms an action in equity. *See In re Vorpahl.* Plaintiffs' complaint arguably could be brought under § 1132(a)(2),

but a recent, thorough opinion has held that there is no right to a jury trial for action under this subsection either. *See Kahnke v. Herter*, 579 F.Supp. 1523 (D.Minn.1984)

**10.** Plaintiff DeVries was also an administrator at the relevant time and is estopped from asserting any injury or claiming any relief from violations of a duty to inform.

**(a) The Second Amendment to § 10.3 was a Material Modification**

■ Defendants argue that 29 CFR § 2520.102–3 is the exclusive list of required disclosures under ERISA and that since a change in the trustees' investment discretion is not listed at 29 CFR § 2520.-102–3, that change cannot have been a material modification. Defendants misread the regulations. 29 CFR § 2520.104b–3 indicates that both material modifications *and* the information identified in part 2520.103b must be described in a summary plan.

Furthermore, the court need not labor long over the contours of material modifications. In this instance, defendants furnished an amendment of the summary plan description after § 10.3 was first amended to limit the trustees' investment discretion. The second amendment reinstated the original investment discretion. The court considers the second amendment no less material than the first and the reporting of the first amendment to be an admission that its contents were material. Consequently, the court concludes as a matter of law that the defendants' plan administrators failed to comply with the reporting and disclosure requirements of 29 U.S.C. §§ 1022(a)(1) and 1024(b)(1) by not reporting a material modification of the plan.

**(b) Plaintiffs have a Private Right of Action**

■ Defendants argue nonetheless that plaintiffs do not enjoy a private right of action to redress the violations of disclosure requirements. In *Rubin v. Decision Concepts, Inc.*, 566 F.Supp. 1057, 1059 (S.D.N.Y.1983) an employer failed to file with the Secretary of Labor information relating to the amendment and restatement of its defined contribution pension plan. The court concluded that the failure to file *with the Secretary* did not create a cause of action in the private plaintiff. *Rubin*, 566 F.Supp. at 1058–59. The court found, however, that the plaintiff had himself received the information provided by law. *Id*. *Rubin* is, in this respect, clearly distinguishable. In this case, there was no disclosure to the plaintiffs and it is of that violation which plaintiffs complain.

Although not cited by either party in the briefs or at oral argument, *Hillis v. Waukesha Title Co., Inc.*, 576 F.Supp. 1103, 1108–10 (E.D.Wis.1983) provides a carefully researched and considered opinion with respect to standing. There the district court concluded that the failure to observe summary disclosure provisions gave rise to an equitable right of action in a private plaintiff where the failure to disclose caused the plaintiff injury. *Hillis*, 576 F.Supp. at 1108. In *Hillis*, the court linked the plaintiff's right of action for disclosure violations to a showing of injury. For the purposes of the motion, the court concludes only that plaintiffs may be entitled to partial summary judgment that defendants violated 29 U.S.C. §§ 1022(a)(1) and 1024(a)(1). Whether and what relief plaintiffs are entitled to remains to be determined upon a factual showing of injury and damages. Since the determination of the appropriate relief due plaintiffs must await a further showing of injury, the court need not rule on defendants' claim that the only relief available for such a breach is an order compelling the administrators to furnish accurate summary plan. The court notes, however, that one court has read *Corley v. Hecht*, 530 F.Supp. 1155 (D.D.C.1982) as providing not only, as defendants suggest, for an order to furnish an accurate summary plan but also for the remedy of the removal of the plan administrator. *See Hillis*, 576 F.Supp. at 1109.

**(iv) Termination of the Money Purchase ESOP**

On July 31, 1976 the employer adopted the Acme Electric Money Purchase ESOP, which has as its distinctive feature a mandatory annual employer contribution. Admission No. 16, Ex. 6. After experiencing financial losses, the corporation considered steps needed to regain operating profits. Adm. No. 65. A factual dispute has been acknowledged by plaintiffs regarding the occurrence of a meeting of the Acme board of directors on July 18, 1978. *See* Plain-

tiffs' Summary Judgment Brief at 22, n. 6. For the purpose of this motion the court must assume that a meeting transpired and that at that meeting Chandler and Evans resolved to terminate the Money Purchase ESOP. DeVries received no notice of the meeting and did not attend.[11] Adm. Nos. 102, 103.

Plaintiffs first argue that the action of the Board of Directors on July 18, 1978 was a nullity since one of the directors, William DeVries had no notice and did not attend the meeting. Admissions 102 and 103 together with plaintiff DeVries' affidavit at ¶ 18 satisfy plaintiffs' burden of establishing the non-existence of any genuine fact disputes concerning DeVries' attendance at or notice of the July 18, 1978 meeting. Defendants have not come forward with any factual showing to the contrary. DeVries submitted a letter of resignation as an employee and officer of the corporation on August 4, 1978; accordingly, there is no issue raised disputing his status as of July 18, 1978 as a member of the board of directors.

▇ Since DeVries neither received notice nor consented to waive notice of the July 18, 1978 meeting, the acts of the Acme board of directors on that date are a nullity in the absence of a custom of informality within the closely held corporation. *See, e.g. American Center For Education, Inc. v. Cavnar,* 80 Cal.App.3d 476, 145 Cal. Rptr. 736 (1978). A fact question has been raised by defendants regarding whether the corporation had a custom of informality with respect to meetings and notice. *See* Chandler Affidavit at ¶ 3, 4. Accordingly, summary judgment holding the July 18, 1978 corporate acts null for want of formalities is denied. It follows therefore that defendants' alleged failure to satisfy 29 U.S.C. § 1082(c)(8) requirements for retroactive amendments is not a ground for recovery.

## IV. Defendants' Motion for Summary Judgment

### (a) Statute of Limitations

Defendants cross moved for summary judgment on the ground that plaintiffs' claims are barred by the applicable statute of limitations.

### (i) Count VI

▇ Count VI of plaintiffs' complaint alleges breaches of trustees' fiduciary duties. ERISA provides no less than a three year limitations period within which to commence such actions. 29 U.S.C. § 1113, *see Hurn v. Retirement Fund Trust, Etc. of Southern California,* 703 F.2d 386, 391, n. 6 (9th Cir.1983). Plaintiffs' cause of action for the improper investment of ESOP funds in the Employer's stock can accrue no earlier than September 1, 1978, the day on which Chandler and Evans resolved to invest in Acme stock. Plaintiffs' action was brought on August 29, 1981 within three years of that date. Defendants' motion for summary judgment dismissing Count VI as time-barred is denied.

### (ii) Reporting and Disclosure Violations and Count VII

Plaintiffs have also argued violations of the trustees' reporting and disclosure obligations. 29 U.S.C. §§ 1022 and 1024. These sections are found in Part I and are not subject to the statute of limitations set out in 29 U.S.C. § 1113. *See Meyer v. Phillip Morris, Inc.,* 569 F.Supp. 1510, 1512 (E.D.Mo.1983).[12]

Plaintiffs also have alleged in Count VII that defendants have never properly terminated the MPESOP since they acted without proper corporate formalities and failed to obtain appropriate authorization from the Secretary of Labor prior to taking ac-

---

**11.** Despite their admission, defendants attempt to generate a factual issue by reference to the Chandler Deposition. The deposition, however, has not been introduced in the record.

**12.** The court notes that although the facts purportedly establishing violations of these sections are set out in Count V, it is not alleged in the amended complaint that these sections were violated.

tion which affected employees' accrual benefits.

 With regard to these claims, the appropriate statute of limitations is to be determined as a matter of federal law, by reference to the appropriate state statute of limitations. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2nd Cir.1983); *see also Jenkins v. Local 705, Intern. Bro. of Teamsters,* 713 F.2d 247 (7th Cir.1983). The first step to determine the analogous state statute is to properly characterize the federal action. *Id.* The parties have not thoroughly addressed this step with respect to these issues. The court, therefore, requests further briefing from the parties on these issues; namely, the proper characterization of these causes of action, the state statute of limitation for claims most closely analogous to these and the times for which these claims began to run.

(b) Laches

 Defendants' motion for summary judgment dismissing plaintiffs' complaint for laches is denied. Defendants have not shown undue prejudice resulting from delay in prosecuting this action.

(c) Other Grounds for Summary Judgment

Genuine issues of material fact preclude summary judgment dismissing plaintiffs' claims in Counts VI and VII. *See* discussion *supra*, pages 246–248. Defendants at oral argument withdrew their motion with respect to Count V.

### V. Summary

The failure of the Acme ESOP trustees to act with unanimity does not, by itself, render the trustees' decision to purchase Acme stock a nullity nor does it convert, by itself, Chandler and Evans' actions into prohibited fiduciary self-dealing.

Plaintiffs have failed, for the purposes of summary judgment, to carry their exacting burden to show the non-existence of genuine issues regarding whether Chandler and Evans breached the prudent man standard of care. Plaintiffs' evidence, however, is persuasive and the claim is not time-barred.

Defendants materially modified the ESOP plan by reinstating themselves with discretion to invest ESOP funds accumulated under the prior profit sharing plan after previously announcing that these funds were segregated from such discretionary authority. Defendants failed to report and disclose this modification as required by 29 U.S.C. § 1024. Plaintiffs have standing under 1132(a)(3) to litigate this violation. Whether their claim is time-barred, however, has not been resolved.

Defendants have raised a genuine issue of fact with respect to whether the corporation should be held to compliance with formal notice and meeting requirements. Accordingly, the corporate acts of July 18, 1978 and March 13, 1979 affecting the Money Purchase ESOP are not, at present, void. Plaintiffs have failed to persuade the court, as a matter of law, that the corporate act of July 18, 1978 did not terminate the M.P. ESOP within the then current plan year. Moreover, the court leaves unresolved pending further briefing the defendants' statute of limitations defense. Defendants' summary defense of latches lacks merit and is denied. Defendants' cross motion for summary judgment in all other respects lacks merit and is denied.

In accordance with the foregoing memorandum,

IT IS SO ORDERED.

IT IS FURTHER ORDERED:

(1) THAT the parties shall have 20 days from today's date to show cause, if any there be, why defendants' demand for a jury should not be stricken;

(2) THAT the defendants shall have 20 days from today's date to submit supplement briefing as required in the memorandum above with respect to their claim that plaintiffs' claimed violations of 29 U.S.C. §§ 1022 and 1024 and for improper termination of the Money Purchase ESOP are time-barred. Plaintiffs shall have 10 days

following service to respond. No further briefing on this issue shall be permitted.