William E. BROCK, Secretary of Labor, United States Dep't of Labor, Plaintiff,

v.

George M. BERMAN, et al., Defendants.

Civ. A. No. 86–1563–T.

United States District Court, D. Massachusetts.

May 4, 1987.

Michael D. Felsen, Office of Solicitor, U.S. Dept. of Labor, Boston, Mass., for plaintiff.

Peter G. Hermes, Patricia A. Weber, Peabody & Arnold, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

This is an action brought by the Secretary of Labor under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., against the Profit Sharing Committee of the Unitrode Profit Sharing Plan (Plan) and the Board of Directors of Unitrode Corporation. The Secretary seeks injunctive relief and restitution because of defendants' alleged breach of fiduciary duty. At immediate issue is defendants' motion for summary judgment on the basis of the three year statute of limitations found in ERISA Section 413(a)(2), 29 U.S.C. § 1113(a)(2).

### I

In December 1979 the Unitrode Board of Directors appointed Atlantic Financial Management, Inc. (Atlantic) the Plan's investment manager. Atlantic's investment in AZL Resources, Inc. resulted in substantial losses to the Plan. The Secretary charges that the Plan's Profit Sharing Committee failed to take proper action to curtail and remedy Atlantic's failure to diversify the Plan's investments. Complaint ¶ 10. The Secretary also alleges that the Unitrode Board of Directors failed to "take steps sufficient to prudently determine

whether the continued designation of Atlantic as investment manager for the Plan was proper under the circumstances." Complaint ¶ 13.

Defendants' position is that this action is barred by ERISA section 413(a)(2). That section provides:

(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of

\* \* \* \* \* \*

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title.

Defendants contend that the Plan's Form 5500 [1], filed on October 20, 1982, constitutes "a report from which [the Secretary] could reasonably be expected to have obtained knowledge" of the alleged breaches of duty that are the basis of this action. The Secretary agrees that this suit is barred if section 413(a)(2) is applicable, because he filed suit on May 21, 1986, more than three years after the Form 5500 was filed. The content of the October 20, 1982 filing is, therefore, critical.

## II

The Schedule of Assets accompanying the filing revealed that the Plan had invested in AZL Resources, Inc. (AZL). The book value of this investment was $1,021,376. Although AZL engaged in oil and gas exploration, the Schedule listed the investment under the heading "Investments and Real Estate." The Schedule also listed investments in Natomas Co. and Phillips Petroleum Co., under the heading "Oil and Gas". The book value of the combined investment in Natomas and Phillips was $602,939. The total book value of the Plan's Equity Fund was $3,618,199. The filing, therefore, revealed that oil and gas concerns accounted for 17% of the Equity Fund's book value. In reality, however, 45% of the Equity Fund's book value was concentrated in the oil and gas industry.

█ The court finds that the October 20, 1982 filing did not contain information from which the Secretary could reasonably be expected to have obtained knowledge of the Equity Fund's alleged excessive concentration in the oil and gas industry. Complaint ¶ 10. The Schedule of Assets revealed that 17% of the Fund's book value was devoted to oil and gas concerns. Although AZL is involved in oil and gas exploration, the Secretary could not have learned this fact from the filing. Moreover, there is nothing in the filing that should have aroused the Secretary's curiosity about the nature of AZL's business. Defendants' motion for summary judgment as to the Secretary's allegations that the Profit Sharing Committee failed to remedy the Plan's excess concentration in the oil and gas industry must be denied.

## III

The information in the October 20, 1982 filing was current as of December 31, 1981. The auditor's opinion accompanying the form contained a note describing events that occurred subsequent to December 31, 1981. Note H states:

Subsequent to December 31, 1981, an investment in common stock of the Plan (whose cost was approximately $1,021,-000 and market value as stated in the financial statements approximated $1,436,000 at December 31, 1981) experienced a substantial decline in market value.

These shares were subsequently sold for a realized loss of $666,000 from the original cost and an additional loss of $415,-000 on the unrealized appreciation at the balance sheet date. Subsequent to the

1. A Form 5500 is an annual report required under 29 U.S.C. §§ 1023, 1024. The report must include, *inter alia,* a statement of assets and liabilities, a statement of changes in net assets available for plan benefits, a statement of income and expenses, and the terms and amount of any indebtedness.

balance sheet date additional shares were purchased whose cost approximates $933,000 which have been sold for a realized loss of approximately $623,000.

As a result of the above, the Board of Directors has terminated the appointment of the investment manager and appointed a new investment manager. Additionally, they have retained counsel to evaluate and pursue the Plan's legal remedies. They had [sic] engaged an investment consultant to evaluate this investment and recommend a program for its liquidation.

Defendants' contend that Note H contains information "from which [the Secretary] could reasonably be expected to have obtained knowledge" of the alleged failure to monitor Atlantic by the Board of Directors. They contend, therefore, that the three year statute of limitations is applicable, and that the Secretary's complaint against the Board is time-barred.

The Secretary admits that Note H reveals a likely breach of fiduciary duty by Atlantic, but he vigorously denies that the filing reveals the alleged failure of the Board of Directors to monitor Atlantic's activities. The Secretary's rationale is that Note H's report of Atlantic's failure in no way implicates the Board of Directors. The Secretary relies on ERISA section 405(c)(2), 29 U.S.C. § 1105(c)(2), for this proposition. That section provides that when a named fiduciary designates an investment manager to make investment decisions, the named fiduciary is not liable for an act or omission of the investment manager, except in certain limited circumstances.[2]

The Secretary also relies on the final paragraph of Note H which describes the actions taken by the Board as a result of the drastic decline in the value of the AZL

investment. The Secretary contends that the final paragraph of Note H tends to exculpate the Board rather than notify the Secretary of potential wrongdoing by the Board.

The Court does not find the Secretary's reliance on ERISA section 405(c)(2) persuasive. Although it is true that the Board is not automatically liable for the imprudent decisions of the investment manager, that conclusion is a long way from saying the Board has no responsibility whatsoever. To the contrary, ERISA section 405(c)(2) clearly provides for liability when a named fiduciary fails to monitor adequately the performance of the investment manager.[3]

Although the final paragraph of Note H states that the Board dismissed Atlantic and is pursuing its legal remedies, these disclosures do not exculpate the Board. The relevant inquiry, in light of the Secretary's complaint, is not merely whether the Board acted, but whether the Board's action was timely. This is especially so because Note H reveals that Atlantic made additional substantial purchases of AZL, possibly after the investment declined in value. Rather than being exculpatory, Note H alerts the reader to the issue of whether or not the Board's remedial action was timely.

■ In *Brock v. TIC International Corp.*, 785 F.2d 168 (7th Cir.1986), the Secretary argued that the plan's filing did not put the Secretary on notice of an alleged breach of fiduciary duty by the defendant, because the form nowhere identified the defendant. Judge Posner, writing for the Seventh Circuit, rejected the Secretary's argument:

"The omission of TIC's name could be significant only if we accepted the Department's argument that the three-year statute of limitations applies only if ev-

---

**2.** ERISA section 405(c)(1) authorizes the named fiduciaries to "designate persons other than named fiduciaries to carry out fiduciary responsibilities ... under the plan." Section 405(c)(2) states that when the named fiduciary designates a person to perform fiduciary responsibilities, "then such named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility."

**3.** For instance, Section 405(c)(2) imposes liability on named fiduciaries who violate the prudent man standard "with respect to such allocation or designation" or by "continuing the allocation or designation." *See* § 405(c)(2)(A)(i) and (iii).

ery element of the violation ... is evident on the face of the report, with no need for inference or further inquiry. The language of section 413(a)(2)(B) cannot sustain such an interpretation; 'a report from which he could reasonably be expected to have obtained knowledge of such breach or violation' cannot mean, 'a report that demonstrates on its face that a breach or violation has ocurred.' If it did mean that, subsection B would have no application to the Department of Labor, for the Department has actual knowledge of the violation (subsection A) in any case where a report actually confessing a violation is filed." *Id.* at 172. This court agrees with the reasoning of the Seventh Circuit Court of Appeals.[4] If subpart (B) is to have meaning independent of subpart (A), it must be read to apply to situations where the filing reveals facts sufficient to put the Secretary on notice that further inquiry is warranted.

■ The filing involved in this case unquestionably reveals a failure by the investment manager. The Board, as a named fiduciary, retains responsibility for determining whether the continued designation of the investment manager is appropriate. ERISA § 405(c)(2), 29 U.S.C. § 1105(c)(2). Although the Secretary would have had to engage in further inquiry to determine whether the Board breached its responsibilities, the Form 5500 constituted a disclosure sufficient to raise the expectation that the Secretary would act to obtain knowledge of the Board's alleged misdeed. The Secretary's suit against the Board of Directors is, therefore, untimely.

An order will issue.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ordered as follows:

1. Defendants' motion for summary judgment, insofar as it relates to the Secretary's allegation that the Profit Sharing Committee failed to remedy the investment manager's failure to diversify Plan assets, is denied.

2. Defendants' motion for summary judgment, insofar as it relates to the Secretary's allegation that the Board of Directors failed to determine whether the investment manager should be retained, is granted.

It is so ordered.

---

4. In *Fink v. National Savings and Trust Co.,* 772 F.2d 951 (D.C.Cir.1985) (Scalia, J., dissenting), the appeals court reversed the district court's finding that the three year statute of limitations barred plaintiff's suit. The Court of Appeals found that the complaint alleged that the trustee failed to perform its "statutory duties of investigating and evaluating the Plan's investments." *Id.* at 957. The court concluded that "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty (in contrast to, e.g., a loan to a third party-in-interest which is explicitly prohibited under [ERISA]) cannot communicate the existence of an underlying breach." *Id.* This court agrees with the Seventh Circuit's conclusion that the above quoted language in *Fink* is "unnecessarily broad." *TIC,* 785 F.2d at 173.