904 F.2d 708
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael TERNES, Plaintiff Counter Defendant-Appellant,
v.
TERN-FAM, INC., f/k/a Standard Steel Treating Company;
Carole Ternes Brennan; Valerie Nanette King;
Patricia Dore; Paul F. Ternes, Jr.,
Defendants Counter Plaintiffs-Appellees.
 No. 89-1648.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1990.
 
 Before BOYCE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges, and DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Michael Ternes appeals the district court's grant of summary judgment for the defendants on statute of limitations grounds in this ERISA action. We affirm.
 
 
 2
 This litigation arises from a dispute over the distribution of a profit sharing plan for a family business. In January 1980, Michael Ternes, a resident of the state of Florida, replaced his brother as president of Tern-Fam, Inc., formerly known as Standard Steel Treating Co., a closely-held family business and Michigan corporation.[1] While the facts regarding Michael Ternes's management of the business are highly disputed, the facts essential to our resolution of this case are not in dispute.
 
 
 3
 By late 1984, Tern-Fam had no cash, no accounts receivable and approximately $2.5 million in debt. At that time, the other shareholders, who (except for Michael Ternes's now deceased mother) are the defendants in this case, retained a lawyer to negotiate with the creditors and sell Tern-Fam's assets to cover the corporation's debt. Michael Ternes was thereafter formally stripped of his director and officer status.
 
 
 4
 Michael Ternes accrued an interest in Tern-Fam's profit sharing plan while he was an employee. Under the plan, his interest vested. On March 15, 1983, by unanimous written consent, the Board of Directors signed a resolution terminating the plan. In 1983 and 1984, Ternes transferred plan funds to Tern-Fam to satisfy corporate debts. He was aware that he was entitled to plan benefits at the time he made the transfers. When Ternes left the employ of Tern-Fam, Inc. in January 1985, he had not received his share of the plan. As of March 31, 1987, he was entitled to receive $64,669.00 plus interest.
 
 
 5
 Michael Ternes claims that Tern-Fam's attorney, Ralph Kliber, told him that his interest in the plan would be paid to him when the accounting of the assets was final. He declares that his mother, Patricia Ternes, also told him that his benefits would be paid to him after the sale of Tern-Fam, Inc.'s assets. He maintains that he was given further assurance that he would be paid when the defendants paid nearly $300,000 to his mother's estate, representing her interest in the plan. Despite his repeated demands, he has yet to have been paid his benefits.
 
 
 6
 On January 12, 1988, Michael Ternes sued the defendants in the United States District Court for the Eastern District of Michigan to recover payment of ERISA and other benefits due him under Tern-Fam's profit sharing plan. The eight-count complaint sets out two ERISA claims, Counts IV and VII. Count IV sets out a claim for Ternes's benefits under the plan. It states that Tern-Fam has breached its fiduciary duty by refusing to pay Ternes the $64,669 plus interest he was owed on July 31, 1987. In Count VII, Ternes states that Tern-Fam's directors breached their fiduciary duties by withholding Ternes's profit-sharing benefits. The other counts are "state" claims for money allegedly owed to Ternes due to debentures, notes, salary, business expenses, the directors' improper failure to pay creditors, and their failure to appoint a receiver under M.C.L.A. 450.1851, Counts, I, II, III, V, VI, and VII, respectively. On February 9, 1988, the defendants filed a motion to dismiss Counts IV and VII of the Complaint, the ERISA counts, based on the three-year statute of limitations set forth in 29 U.S.C. Sec. 1113(a)(2). On March 24, 1988, the district court determined that issues of fact existed and denied the motion.
 
 
 7
 One year later, on February 9, 1989, the defendants filed a motion for summary judgment which was identical in substance to, and incorporated by reference, the motion previously denied. On April 5, 1989, as amended April 7, 1989, the district court granted the motion for summary judgment on the statute of limitations claim in Counts IV and VII.
 
 
 8
 The district court found that Ternes's affidavits indicated that he was aware that he was entitled to the funds at the time the plan was terminated in March 1983. Moreover, a December 1983 letter to Ternes and April 1984 payments made by Ternes to all plan participants other than himself and his mother demonstrated his knowledge regarding his right to plan benefits. Ternes was also found to have knowledge of the March 1983 resolution terminating the plan. In short, these findings all established Ternes's knowledge that he was owed benefits.
 
 
 9
 The district court then found a December 25, 1984 letter from Ternes to the members of the profit-sharing plan and trust committee showed his actual knowledge that the fiduciary duty owed to him had been breached because he had not received his plan benefits. The court found that under 29 U.S.C. Sec. 1113(a)(2), the statute of limitations begins to run from the "earliest date on which the plaintiff had actual knowledge of the breach or violation." The district court found that Sec. 1113 did not provide any tolling provisions and rejected Ternes's argument that assurances he received in regard to his being paid his due benefits tolled the statute of limitations. The district court held that under Sixth Circuit law, "a statute of limitations runs from the time a claim accrues and causes of action accrue when a wrong or breach occurs." Turner v. Retirement Plan of Marathon Oil Co., 659 F.Supp. 534 (N.D.Ohio 1987), aff'd without opinion, 845 F.2d 327 (6th Cir.1988). In Turner, the district court held that the ERISA statute of limitations issue was analogous to employment discrimination cases which held that the statute of limitations commenced at the time of the wrongful act itself rather than the time when the consequences of the act become apparent. See Chardon v. Fernandez, 454 U.S. 6 (1981); Delaware St. College v. Ricks, 449 U.S. 250 (1980).
 
 
 10
 The district court held that Ternes had actual knowledge of a breach of fiduciary duty by December 24, 1984 at the latest. Therefore his January 14, 1988 filing of his Complaint was too late and his ERISA claims were time-barred. Because there was no complete diversity the district court then declined to exercise pendent jurisdiction over the remaining state claims and the remainder of the complaint was dismissed without prejudice.
 
 
 11
 On April 19, 1989, Michael Ternes petitioned the district court to reconsider its order. That petition was denied on May 2, 1989 and Michael Ternes filed this appeal.
 
 
 12
 Both of Ternes's ERISA claims allege breaches of fiduciary duty by the defendants by withholding profit sharing benefits owed to Ternes. We reject Ternes's argument that Count IV of his Complaint was for due benefits, not a breach of fiduciary duty. While some courts have applied analogous state statutes of limitations for civil actions to recover ERISA benefits, those decisions did not address situations where the action, as this action, was expressly brought against a plan fiduciary for breach of fiduciary duties. See Jenkins v. Int'l Brotherhood of Teamsters Pension Plan, 713 F.2d 247 (7th Cir.1983) (applying state statute in non-fiduciary claim). To the extent other courts have applied state statutes in actions against fiduciaries for fiduciary breach, we reject that reasoning as contrary to the plain language of 29 U.S.C. Sec. 1113. Cf. Dameron v. Sinai Hosp. of Baltimore, Inc., 815 F.2d 975, 981-983 (4th Cir.1987). We do not address the defendants' contention that all claims brought for ERISA benefits are subject to Sec. 1113's limitations period because Ternes's complaint and his counsel's statements to the district court clearly maintain his action against fiduciaries for breach of their fiduciary duty. Therefore, the only statute of limitations that applies to this action is 29 U.S.C. Sec. 1113 which provides:
 
 Sec. 1113. Limitation of actions
 
 13
 No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
 
 
 14
 (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
 
 
 15
 (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
 
 
 16
 except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.
 
 
 17
 29 U.S.C. Sec. 1113.
 
 
 18
 Ternes appeals the district court's grant of summary judgment on the ground that a genuine issue of material fact exists on the issue of when he acquired knowledge of the fiduciary breaches for the purposes of engaging the applicable statute of limitations. We engage in a de novo review of the district court's grant of summary judgment. Berlin v. Michigan Bell Tele. Co., 858 F.2d 1154, 1161 (6th Cir.1988). Hence, we determine, in the light most favorable to the non-moving party, whether any issue of material fact existed in the record below and whether the defendants were entitled to a judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Berlin, 858 F.2d at 1161; Hand v. Central Transport, 779 F.2d 8, 10 (6th Cir.1985).
 
 
 19
 The evidence presented to the district court and to us clearly shows that Ternes was aware of pre-1985 breaches. The district court discussed several dates and events marking Michael Ternes's actual knowledge of his benefits and the alleged breaches of fiduciary duty by the defendants. Ternes's affidavits indicate that he not only knew of the breaches but acquiesced in and facilitated the "loan" of plan funds to the company.
 
 
 20
 As for Ternes's claims that he was unaware of the breaches, he admitted that he participated in the transfer of funds from the plan to Tern-Fam between January 1983 and October 1984. That alone is a fiduciary breach violating ERISA. In Marshall v. Kelly, 465 F.Supp. 341 (W.D.Okla.1978), a plan fiduciary was held to have violated 29 U.S.C. Secs. 1104(a)(1), 1106, 1103(c)(1) of ERISA by loaning plan money to his company, himself, and his friends. Ternes also breached express plan provisions and a March 1983 Resolution to distribute benefits--even more breaches that he was aware of in March 1983. Further, statements by Ternes and his counsel to the district court reveal his knowledge that the loan was a breach. Especially significant in the district court's decision that the statute of limitations had run was the December 25, 1984 letter in which Ternes informs the plan's trust committee that his vested plan benefits should be paid to him in a single payment "as soon as possible after the closing and the corporation repays the plan." (emphasis supplied).
 
 
 21
 Even assuming that the prior dates discussed by the district court are in dispute on the question of Ternes's knowledge of breaches, the December 25, 1984 letter clearly shows Ternes's actual knowledge of the defendants' alleged breaches of their fiduciary duty more than three years before he filed his complaint. Consequently, there is no question of material fact on the issue of his knowledge of the breaches. The question of law is whether a claim for breach of fiduciary duty accrues when a claimant, also serving as a fiduciary, is first aware of facts constituting a breach of fiduciary duty to the plan and himself, or at a later date when he elects to "apply" for benefits.
 
 
 22
 Ternes maintains that the three-year statute did not commence running until his application for benefits was denied. We disagree. Turner v. Retirement Plan of Marathon Oil Co., 659 F.Supp. 534 (N.D.Ohio), aff'd, 845 F.2d 327 (6th Cir.1988), stands for the proposition that to trigger the ERISA statute of limitations, the plaintiff need only have knowledge of the act and cannot wait until the consequences of the act become painful. In Katsaros v. Cody, 744 F.2d 270 (2d Cir.1984), the Second Circuit held that a claim for breach based on the unlawful transfer of plan assets accrued when the plaintiffs were aware, or should have been aware, of the transfer. Nothing in Katsaros even remotely suggests that accrual of a claim for breach may be tolled until an "application" for benefits is made and denied, or until the breaching party fails to cure the breach. Cases that seemingly support Ternes's position concerned the plaintiffs who were not even aware that a breach had occurred. Thus, the accrual of the cause of action did not occur until the plaintiffs were aware of the breach--at the time they were denied the benefits for which they applied. In short, there need be neither a denial of an "application" for benefits, nor an opportunity to cure, before a claim for breach of fiduciary duty accrues. As Sec. 1113(a)(2) expressly provides, a claim for breach accrues when the claimant has knowledge of the facts constituting the breach. Ternes clearly had the requisite knowledge by December 25, 1984.
 
 
 23
 Ternes argues that the statute of limitations should have been tolled due to the defendants' fraud or concealment of their breach. The district court held that there are no tolling provisions in 29 U.S.C. Sec. 1113. We disagree with that construction. The express language of the statute provides an exception to the three-year tolling period in the case of fraud or concealment. Ternes maintains that the assurances from the defendants' attorney, Kliber, that Ternes would receive his benefits concealed the defendants' intent to deprive Ternes of his plan interest.
 
 
 24
 We hold that, as a matter of law, the tolling provision in 29 U.S.C. Sec. 1113 does not apply to situations where the claimant knew and participated in the breach. Such a construction would be repugnant to the concept of concealment. Moreover, the courts which have considered the "fraud and concealment" language in Sec. 1113 have not interpreted it to apply to alleged misinterpretation respecting intention to cure a breach; rather, they have confined that language to situations involving misrepresentation or concealment of the underlying facts constituting breach. Schaffer, 853 F.2d at 1490-92. We also note that Ternes's Complaint fails to allege fraud or concealment by the defendants; it alleges only that the defendants breached their fiduciary duties by withholding benefits.
 
 
 25
 Ternes's non-ERISA claims are cognizable here solely upon the doctrine of pendent jurisdiction. That doctrine requires that for claims which would ordinarily be heard in state courts, i.e., claims in cases where complete diversity is lacking, such as this case, or claims which fail to meet the minimum monetary amount for damages, the state-type claims must arise out of a common nucleus of operative facts. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). When federal claims are dismissed before trial, the state claims should usually be dismissed as well. Id. at 726. Here, the district court exercised its discretion and following its dismissal of the federal claims followed the normal and dismissed the state claims which then had nothing to which they could be appended. Because we affirm the district court's grant of summary judgment on statute of limitations grounds, we agree with the district court's exercise of its discretion by dismissing the remaining state claims and we need not explore the question of whether they arose from a common nucleus of operative facts under Gibbs.
 
 
 26
 Therefore, the district court's judgment is affirmed.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Several of the individual defendants are citizens of Florida. Therefore, there is no diversity jurisdiction over the state-type claims raised in Michael Ternes's complaint. Federal court jurisdiction over those claims rests solely on pendent jurisdiction grounds