*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0405P (6th Cir.)
File Name: 03a0405p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

FRANK C. WRIGHT, M.D.,
JOHN P. GOFF, M.D., and
CARL A. KRANTZ, M.D., as
Trustees of the Wright, Goff,
Krantz, Harmon, Jones,
M.D.'s Profit Sharing Plan,
　　*Plaintiffs-Appellants,*

　　　　*v.*

MICHAEL A. HEYNE, and
VESTAX SECURITIES
CORPORATION,
　　*Defendants-Appellees.*

No. 01-4359

———

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-01102—Norah McCann King, Magistrate Judge.

Argued: May 2, 2003

Decided and Filed: November 14, 2003

———————————

Before: NELSON and COLE, Circuit Judges; ROSEN,*
District Judge.

———————

**COUNSEL**

———————

**ARGUED:** Alphonse P. Cincione, BUTLER, CINCIONE, DiCUCCIO & BARNHART, Columbus, Ohio, for Appellants. Nancy J. Manougian, ARTER & HADDEN, Columbus, Ohio, for Appellees. **ON BRIEF:** Alphonse P. Cincione, N. Gerald DiCuccio, BUTLER, CINCIONE, DiCUCCIO & BARNHART, Columbus, Ohio, Roger Makley, COOLIDGE, WALL, WOMSLEY & LOMBARD, Dayton, Ohio, for Appellants. Nancy J. Manougian, Danny L. Cvetanovich, ARTER & HADDEN, Columbus, Ohio, for Appellees.

———————

**OPINION**

———————

ROSEN, District Judge.

## I. *INTRODUCTION*

Plaintiff-Appellants Frank C. Wright, John P. Goff and Carl Krantz brought this action as Trustees of the Wright, Goff, Krantz, Harmon and Jones Profit Sharing Plan (the "Retirement Plan") under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) ("ERISA"), against Vestax Securities Corporation ("Vestax") and its owner, Michael A. Heyne, investment advisors to Plaintiffs' Retirement Plan, alleging that Vestax and Heyne breached certain fiduciary duties in making investment decisions and

———————

*The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

engaged in conduct prohibited under ERISA with regard to the receipt of commissions. The District Court for the Southern District of Ohio granted Defendants' Motion for Summary Judgment on the ground that ERISA's three-year statute of limitations barred Plaintiffs' claims. Plaintiffs timely appealed the District Court's decision.

For the reasons set forth below, we affirm the District Court's grant of Defendants' Motion for Summary Judgment.

## II.  *FACTUAL BACKGROUND*

Plaintiffs Frank C. Wright, John L. Goff and Carl A. Krantz are trustees of the Wright, Goff, Krantz, Harmon Jones, M.D.'s Profit Sharing Plan ("the Retirement Plan"). They are physicians who practiced together as a professional corporation known as "Wright, Goff, Krantz, M.D.'s, Inc." from the late 1970s until 1995 when Goff retired.[1]

Shortly after the corporation was formed, it created a Retirement Plan. Wright and Krantz have been trustees of the Plan since its inception, and Goff was a trustee of the Plan from the time the Plan was created until his retirement from the practice of medicine in 1995.

The Plan included a commonly-managed general account, as well as individual self-directed accounts for those participants who wanted them. Plaintiffs were all participants in the Plan, and each had a self-directed account under the Plan. While Wright, Goff, and Krantz, as trustees, were responsible for directing transactions in the Plan's general account, Goff played the most active role in directing those transactions. With respect to the self-directed accounts, each individual was responsible for the direction of his own self-directed account.

---

[1] The name of the corporation has changed from time to time to reflect the names of the physicians affiliated with the practice.

Prior to late 1987, Plaintiffs utilized the services of Professional Investment Management to help them invest the assets of the Plan's general account. Wright, Goff and Krantz also each used the services of Professional Investment Management to help them with investments in their respective self-directed accounts.

Plaintiffs terminated the services of Professional Investment Management in late 1987, and shortly thereafter, hired Defendant Michael Heyne to provide investment advice and services to the Plan with respect to the general account. Each individual also retained Heyne to provide investment advice and services for his self-directed account.

Plaintiffs were also aware that Heyne was affiliated with, and had an ownership interest in, Vestax. In December 1987, the Plan and each of the individual Plaintiffs also entered into a "VesTrak Investment Analysis Service Agreement" with Vestax, under which Vestax was to provide quarterly Investment Analysis Reports to the Plan with respect to the general account, as well as to Plaintiffs with respect to each of their respective self-directed accounts. These reports included a list of each investment made, the date and cost of each investment, the proceeds received from the sale of each investment, the current market value of each investment and the earnings of each investment. The VesTrak Agreements disclosed that Vestax would earn fees for the services it would provide and the amount of the fees that would be earned. The Agreements further disclosed that Vestax could earn commissions on the purchase or sale of certain securities:

> Client understands that if he as a purchaser of the VesTrak Investment Analysis Service uses the services of Vestax in connection with the sale or purchase of a security that is the object of the VesTrak Investment Analysis Service, then Vestax may act as principal for its own account or as agent for another person in undertaking such sale or purchase and may be paid a

commission on such sale or purchase. Client hereby consents to the payment of such commission to Vestax.

(*See* JA 1502, 1551)

Also in December 1987, the Plan and Wright, Goff, and Krantz, individually with respect to their self-directed accounts, entered into a Soliciting Agent Agreement with Heyne. The Soliciting Agent Agreements disclosed that Heyne solicited clients to enter into VesTrak Agreements with Vestax, that Heyne was an officer and stockholder of Vestax, that Heyne could receive a portion of the fees that a client would pay to Vestax, that Vestax would receive "commissions or other compensation" if "financial service products or investments are purchased through Vestax" and that Heyne would receive "a portion of such commissions if such sales are arranged through [Heyne] and [he] is a registered representative of Vestax." (*See* JA 1522).

Pursuant to the VesTrak Agreements, quarterly Investment Analysis Reports were provided to the Plan and to Wright, Goff and Krantz, individually, for their respective self-directed accounts. Heyne also usually met with Plaintiffs on a quarterly basis to discuss the reports as well as to answer any questions Plaintiffs had about the investments and other information reflected in the reports.

In 1991 or 1992, approximately three or four years after the Plan's relationship with Heyne and Vestax began, Goff began to feel some "dissatisfaction" with Heyne. The dissatisfaction stemmed from Goff's learning that Heyne was an officer of AFA Financial, Inc., an entity with which the Plan and Wright, Goff and Krantz on behalf of their own respective self-directed accounts had placed money for management. Goff considered Heyne's affiliation with AFA Financial to be a conflict of interest and he instructed Heyne to take his money out of AFA, which Heyne did. Goff was also concerned that the general account and his own self-directed account were not meeting his financial objectives and that the

fees and commissions that Heyne was earning was "driving the choice of investment as opposed to the appropriateness of the investment." (JA 86, 97-104).

During 1992 and 1993, Krantz likewise began to become dissatisfied with Heyne's services. Like Goff, Krantz was concerned with Heyne's affiliation with AFA Financial, Heyne's failure to follow investment objectives, and the fees and commissions paid to Heyne.

Sometime in 1993, Goff asked Philip Shaffer of the Consulting Group at Smith Barney Shearson to review the performance of the general account and his own self-directed account. Shaffer informed Goff that the investments in his portfolio were "driven by fees and commissions" and were "not proper." (JA 105). Shaffer also informed Goff that Heyne had deviated from the investment plans for the Plaintiffs' self-directed accounts. (JA 125).

Later in 1993 or early 1994, Goff also asked Denny Dicky of Berwanger Overmeyer to review the Plan's investments and performance. Dicky informed Goff that after reviewing the Plan's investments, he "couldn't sleep at night." (JA 108) Dicky also made statements of "the same tenor as Mr. Shaffer's comments." *Id*.

In 1994, Wright asked his brother, Tom Wright (who had experience managing his own investments and later registered as an investment advisor), to review his self-directed account. In June 1994, Tom Wright advised his brother to "get away from" Heyne, Vestax, and AFA Financial. (JA 889) Tom Wright further advised his brother that he had received "bad [investment] advice" from Heyne, should "not purchase any more limited partnerships," and should not "annuitize any more of the annuities." (JA 1773-74). Tom Wright also concluded that Heyne had been paid "excessive compensation" for his services . (JA 1804-05).

Then, in early 1995, Goff asked William Cseplo of McDonald & Company to review his self-directed account. In a letter dated March 18, 1995, Cseplo specifically stated that he was "terribly disturbed at the failure of this investment advisor to implement your written desires and the thought that he would place his interests (commissions) before your interests. I have never seen such gross neglect of ethics with regards to this portfolio. . . ." (JA 558-59, 622-23). The letter went on to state:

> If you feel as if you have been wronged by what has occurred in this portfolio, I would suggest you could probably seek legal action. I believe you have some basis. Michael Heyne invested your money in high yield bonds that you specifically told him not to buy. He annuitized an annuity and, in my opinion, had no reason to do so. . . . I would seek full restitution for the transactions that were not in your specific written directions and the annuity transactions that make no sense at all. . . .

*Id*.

On March 26, 1995, just a few weeks after receiving Cseplo's conclusions with respect to his review of Goff's self-directed account, Goff terminated his relationship with Heyne and Vestax and transferred his self-directed account to Cseplo.

In April 1995, Plaintiff Krantz asked Cseplo to review his self-directed account. On April 19, 1995, Cseplo informed Krantz in writing that, although Krantz had instructed Heyne "not to purchase high yield (junk) bond portfolios[, Heyne] began the account in 1988 with a purchase of the very thing you did not want to own. . . ." (JA 598-99, 624). On May 2, 1995, based on Cseplo's conclusions, Krantz terminated his relationship with Heyne and Vestax with respect to his self-directed account and engaged Cseplo to manage the account.

On July 20, 1995, the Plan informed Heyne that it, too, was terminating its relationship with Heyne and Vestax with respect to the general account and on August 10, 1995, the Plan's general account was transferred to Cseplo.

On September 11, 1995, Wright terminated his relationship with Heyne and Vestax with respect to his self-directed account.

On February 27, 1997, Plaintiffs retained the services of an attorney, Tony Merry. In late 1997, after further analysis by Cseplo, in which Cseplo advised at least Goff and Krantz that the Plan had suffered monetary losses at the hands of Heyne and Vestax, Merry advised Plaintiffs that they had valid ERISA claims arising out of Heyne's alleged breach of fiduciary duties. Merry specifically advised Plaintiffs that some of Heyne's investments had created a conflict with organizations in which Heyne and Vestax had personal interests, and that Heyne had been paid excessive compensation.

On October 30, 1998, Plaintiffs filed the instant action. In their Complaint, Plaintiffs alleged that Heyne and Vestax acted in breach of their fiduciary duties in violation of ERISA, 29 U.S.C. §§1109, 1132(a)(2), (3), and engaged in conduct prohibited by 29 U.S.C. § 1106(a), (b).

Pursuant to 28 U.S.C. § 636(c)(3) and Fed. R. Civ. P. 73(c), the parties consented to the jurisdiction of a United States Magistrate Judge and further consented that an appeal from the Magistrate Judge's judgment would be directly to the Court of Appeals for the Sixth Circuit. (JA 22).

### III. *THE DISTRICT COURT'S DECISION*

On July 31, 2001, Defendants filed a Motion for Summary Judgment arguing that because the action had been commenced more than three years after the Plaintiffs acquired actual knowledge of the Defendants' alleged breach of duty,

the claims of the Plaintiffs were barred by the three-year statute of limitations provided in 29 U.S.C. § 1113. (The text of § 1113 is set forth in footnote 2, *infra*.) On November 29, 2001, the District Court issued an Opinion and Order and Judgment agreeing with Defendants that Plaintiffs' Complaint was time-barred.

In reaching its conclusion, the District Court relied on several previous decisions of this Court. While noting that this Circuit has yet to articulate in any published decision a broad definition of "actual knowledge" for purposes of ERISA's limitations of actions provision, 29 U.S.C. § 1113, the District Court also noted that the Sixth Circuit has examined numerous cases involving the question of whether a plaintiff had "actual knowledge" under § 1113(2). Specifically, the District Court stated:

> [T]o charge an ERISA plaintiff "with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues ... [S]ection 1113(a)(2)(A) [sic] means only that *once [the plaintiff] learns of the facts that support his allegation of illegality, he has no more than three years in which to bring his ... suit*."

(JA 2011 (quoting *Rogers v. Millan,* 920 F.2d 34, 1990 WL 61120 at *4 (6th Cir. 1990) (unpublished decision; text available on WESTLAW) (emphasis added by district court)).

Relying on the information provided to Plaintiffs by various investment advisors in 1994 and 1995, the District Court reached the conclusion that Plaintiffs had "actual knowledge" under § 1113(2) more than three years prior to filing their claim in October 1998. Specifically, the District Court concluded that:

> The record in this action does not portray investors (or trustees) who, prior to the Fall of 1997, merely "had

> general concerns for [their] investments, which every investor should have." Rather, each of the three trustees had been advised by any number of financial experts, by mid-1995, that defendants had engaged in inappropriate and unauthorized investments, under circumstances that conflicted with the interests of the Plan and its participants.

(JA 2013 (citation omitted)).

The District Court also rejected Plaintiffs' argument that it was not until the fall of 1997, when William Cseplo informed them that Appellee's conduct had worked to the financial detriment of the Plan, that Plaintiffs had the requisite "actual knowledge." The District Court determined that "ERISA's three-year statute of limitations will apply when the plaintiff has actual knowledge of the facts that give rise to the claims upon which it sues; it 'cannot wait until the consequences of the act become painful.'" (JA 2013) (citing *Ternes* v. *Tern-Farm, Inc.*, 904 F.2d 708, 1990 WL 80915 at *3 (6th Cir. 1990) (unpublished decision; text available on WESTLAW)). Therefore, the District Court concluded that Plaintiffs had actual knowledge by at least September 1995 and their claim was, therefore, barred by § 1113(2) of ERISA.

## IV. *DISCUSSION*

### A. *STANDARD OF REVIEW*

This Court reviews a district court's grant of summary judgment *de novo. Pinney Dock & Transport Co.* v. *Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1998), *cert. denied*, 488 U.S. 880 (1988). In conducting this review, the Court determines, in the light most favorable to the non-moving party, whether any issue of material fact existed in the record below. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24 (1986).

## B.  ERISA'S THREE-YEAR STATUTE OF LIMITATIONS

Under ERISA, when a fiduciary breaches an obligation or duty, the victim of the breach normally has six years in which to file suit. 29 U.S.C. § 1113(1). However, this period may be shortened to three years where the victim had "actual knowledge of the breach or violation." 29 U.S.C. § 1113(2).[2]

The District Court found that Plaintiffs had "actual knowledge of the breach or violation" by at least September 1995. It is clear from the record below that if Plaintiffs did not have "actual knowledge," their claim was filed within the requisite six-year period provided in § 1113(1). Therefore, the ultimate question presented here is whether Plaintiffs had "actual knowledge of the breach or violation" more than three years prior to the initiation of this action on October 30, 1998.

---

[2] Section 413 of ERISA, 29 U.S.C. §1113, states:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date of which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

## 1.  THE "ACTUAL KNOWLEDGE" REQUIREMENT

The basic ERISA limitation period of six years begins on the date of the breach or violation. However, a "plaintiff with actual knowledge of a non-fraudulent breach of ERISA fiduciary duties must file suit within three years." *Tassinare* v. *American Nat'l Ins. Co.*, 32 F.3d 220, 223 (6th Cir. 1994).

As the District Court observed, the Sixth Circuit has yet to articulate a broad definition of "actual knowledge" under 29 U.S.C. § 1113(2). However, other circuits have examined the issue of what constitutes "actual knowledge" under §1113(2), and differing views of the definition have emerged.

Plaintiffs urge the Court to apply the standard articulated by the Third Circuit in *Gluck v. Unisys Corp.*, 960 F.2d 1168 (3rd Cir. 1992), which was subsequently adopted and applied by the Fifth Circuit in *Reich v. Lancaster*, 55 F.3d 1034, 1057 (5th Cir. 1995) and *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954-55 (5th Cir. 1995).

In *Gluck*, the Third Circuit held that "'[a]ctual knowledge of a breach or violation' requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Id.* at 1177. The Third Circuit elaborated upon its formula in *International Union v. Murata Erie North America, Inc.*, 980 F.2d 889 (3rd Cir. 1992), stating that "'actual knowledge' requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." *Id.* at 900.

However, as indicated above, courts are divided on the issue of what constitutes "actual knowledge" under § 1113(2). The Third Circuit's position represents one view. Other circuits which have examined Section 1113(2)'s "actual

knowledge" requirement -- specifically, the Seventh, Ninth and Eleventh Circuits -- have held that "actual knowledge" requires only knowledge of all the relevant facts, not that the facts establish a cognizable legal claim under ERISA. *See Martin* v. *Consultants & Administrators, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) ("[T]he relevant knowledge for triggering the statute of limitations is knowledge of the *facts* or *transaction* that constituted the alleged violation. Consequently, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality." (Emphasis in original)); *Rush v. Martin Peterson Co.*, 83 F.3d 894, 896 (7th Cir. 1996) ("We have defined 'actual knowledge'. . . as knowledge of the 'essential facts of the transaction or conduct constituting the violation,' and have explained that this means it is 'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'" (internal citations omitted)); *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985) (holding that a claim for breach of ERISA fiduciary duties is not tolled until an attorney advises the plaintiff that the transaction was prohibited and stating: "The statute of limitations is triggered by. . . knowledge of the transaction that constituted the alleged violation, not by . . . knowledge of the law.") *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987) ("To us, section 1113(a)(2)(A) means only that once the Secretary learns of the facts that support his allegation of illegality, he has no more than three years in which to bring his suit."); *Scott v. Evins*, 802 F. Supp. 411, 416 (N.D. Ala. 1992), *aff'd*, 998 F.2d 1022 (11th Cir. 1993) (section 1113(2) "bars an action for violation of [ERISA fiduciary duties] three years after the plaintiff has actual knowledge of the facts, not knowledge of the violation of the law.")

Citing both of the foregoing distinct lines of cases, in *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2nd Cir. 2001), the Second Circuit appears to have adopted a "hybrid" view of the actual knowledge requirement, extrapolating parts of both the Third and Fifth Circuits' view, and of the view espoused

by the Seventh, Ninth and Eleventh Circuits. The *Caputo* court held as follows:

Although this Court has not previously defined the term, we now hold that a plaintiff has "actual knowledge of the breach or violation" within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act. *Accord Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992). While a plaintiff need not have knowledge of the relevant law, *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985), he must have knowledge of all facts necessary to constitute a claim. Such material facts "could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Gluck*, 960 F.2d at 1177. . . .

267 F.3d at 193.

Some courts, in an attempt to resolve the "actual knowledge" inquiry also look to whether the defendant's actions giving rise to the plaintiff's breach of fiduciary claims were "inherently suspect," or "inherently" a statutory violation. For example, in *Fink v. National Savings and Trust Co.*, 772 F.2d 951 (D.D.C. 1985), the plaintiff's breach of fiduciary claim was predicated upon the ERISA Plan trustee's alleged failure to independently evaluate the Plan's investments, not upon the investment itself. The defendant argued that the plaintiff's claim was time-barred because he had knowledge as of the date of the Plan's filing of forms filed with the Department of Labor which disclosed the investment transaction. The court held that the Department of Labor forms alone were insufficient to constitute knowledge to the Plan beneficiaries of the breach of the fiduciary duty of independent evaluation. "The disclosure of a transaction that is not inherently a statutory breach of

fiduciary duty cannot communicate the existence of the underlying breach." *Id.* at 957. *See also, Waller v. Blue Cross of California*, 32 F.3d 1337, 1338 (9th Cir. 1994) (plaintiffs' knowledge of Retirement Plan's purchase of annuities to provide retirement benefits to Plan participants held not to constitute actual knowledge that defendants breached their fiduciary duties by using an infirm bidding process in selecting the annuity providers); *Caputo v. Pfizer, Inc., supra* (plaintiffs' knowledge of defendant's offering of a second voluntary separation offer (VSO) did not constitute actual knowledge of a breach of fiduciary duty claim charging defendants with misrepresentation of future pension benefits for purposes of the § 4113 three-year statute of limitations where the plaintiffs admitted that, when the second VSO was formally announced, although they "suspected" that management had been "fudging it" when it denied that such a package would be offered, they had no knowledge that any individual had knowingly lied to them.   267 F.3d at 186, 193.)

As correctly noted by the Seventh Circuit, "[A]ctual knowledge must be distinguished from constructive knowledge." *Martin*, 966 F.2d at 1086. The line between actual and constructive knowledge is not a bright and readily distinguishable one. "We know that somewhere between 'every last detail' and 'something was awry' lies the requisite knowledge of an ERISA violation . . . . [J]udges, faced with particular contexts and relying on their 'situation sense,' must make the determination." *Id.* at 1086.

Although in this Circuit, we have yet to firmly establish a rule of law broadly defining "actual knowledge of the breach or violation" under Section 413(2) of ERISA, we have had occasion to examine numerous ERISA claims dealing with the determination of when litigants had "actual knowledge." For example, in *Tassinare v. American Nat'l Ins. Co.*, 32 F.3d 220, 222-224 (6th Cir. 1994), we held that a plaintiff's claim for breach of ERISA fiduciary duties was time-barred because the plaintiff did not file suit within three years after he sent a

"protest letter" to the Internal Revenue Service in which he complained about the defendant's conduct with regard to the underpayment of his pension benefits. *See also Farrell v. Automobile Club*, 870 F.2d 1129, 1131 (6th Cir. 1989) (holding that but for an unrelated tolling of the statute of limitations, the plaintiffs' claim for breach of ERISA fiduciary duties would have been time-barred because the plaintiffs had not filed suit within three years after "meeting with one another. . . to review documents which allegedly prove their claim," and rejecting the plaintiffs' contention that they did not have the requisite "actual knowledge" until "their attorney gave his opinion on the strength of their claim.")

In *Ternes v. Tern-Fam, Inc.*, 904 F.2d 708, 1990 WL 80915 (6th Cir. 1990) the plaintiff sued his family corporation to recover payment of ERISA and other benefits due to him under the corporation's profit-sharing plan. 1990 WL 80915 at *3. The district court found that the plaintiff was aware that he was entitled to the funds in March of 1983. The district court further held that a December 1984 letter from Ternes to the members of the profit-sharing plan showed his actual knowledge that he had not received the plan benefits to which he claimed to be entitled. On appeal, the plaintiff argued that the three-year statute of limitations did not commence until his application for the benefits was denied. This Court disagreed, holding that to trigger the ERISA statute of limitations, the plaintiff "need only have knowledge of the act and cannot wait until the consequences of the act become painful." *Id.* at *11-*12 (citing *Turner* v. *Retirement Plan of Marathon Oil Co.*, 659 F. Supp. 534 (N.D. Ohio), *aff'd*, 845 F.2d 327 (6th Cir. 1988)). *See also, Rogers v. Millan*, 920 F.2d 34, 1990 WL 61120 (6th Cir. 1990) ("The three-year limitation period began to run only when [the plaintiff] learned of the facts that support his allegation that the [defendants] breached their [ERISA] fiduciary duties.")

Based on the foregoing discussion of Sixth Circuit law as well as the analysis reflected in the decisions of the Seventh,

Ninth and Eleventh Circuits discussed above, we find that view reflected in these decisions is the better view. Accordingly, we join those Circuits in concluding that the relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute. This view is not only in accord with our previous ERISA "actual knowledge" decisions but it also furthers the policies underlying statutes of limitations. Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims. *See e.g., Board of Regents of University of State of N. Y. v. Tomanio*, 446 U.S. 478, 487-88, 100 S.Ct. 1790, 1796-97 (1980); *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 463-64, 95 S.Ct. 1716, 1722 (1975). As the Supreme Court explained in *Tomanio*, *supra*,

> Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system. Making out the substantive elements of a claim for relief involves a process of pleading, discovery, and trial. The process of discovery and trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh. Thus in the judgment of most legislatures and courts, *there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious.*

446 U.S. at 487-88, 100 S.Ct. at 1796-97 (emphasis added). *See also, Johnson, supra*, ("Although any statute of limitations is necessarily arbitrary, the length of the period

allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." 421 U.S. at 463-64, 95 S.Ct. at 1722). If the requisite "actual knowledge of the breach or violation" could only be obtained, as the Plaintiffs suggest, when they learned that they had a claim for violation of ERISA after consulting with an attorney even though they had actual knowledge years earlier of all of the facts and alleged misdeeds constituting their claim, these policies would be frustrated. If the statute were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney. This would nullify the three-year limitation period of Section 1113(2), something Congress surely did not intend to result when it enacted the statute.

Although the actions complained of in this case may not themselves "communicate the existence of an underlying breach," the extrinsic facts of which the Plaintiffs had actual knowledge demonstrate that Plaintiffs must have known that they had been wronged long before they consulted with an attorney. Neither *Fink* nor any of its progeny suggest that Plaintiffs were entitled to sit on such knowledge for more than three years.

For the foregoing reasons, we hold that to trigger the running of the statute of limitations under Section 413(2) of ERISA, 29 U.S.C. § 1113(2), it is only the plaintiff's actual knowledge of the underlying conduct giving rise to the alleged violation that is required, rather than the knowledge that the underlying conduct violates ERISA. We reject Plaintiffs' argument that the three-year limitation period is tolled until the plaintiff consults with an attorney and learns from the attorney that he has a claim for breach of ERISA fiduciary duties. In fact, even the Third Circuit has made clear that the running of the three-year statute of limitations is not tolled until an attorney tells the plaintiff that he has a

claim. *See, Gluck v. Unisys, supra* ("We emphasize, however, that our holding does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer." 960 F.2d at 1177.)

Applying this rule to the facts of the instant case, resolution of the issue presented becomes rather straightforward, as it is beyond serious question that Plaintiffs had "actual knowledge" of the material facts upon which their claims for breach of ERISA fiduciary duties are based more than three years before they filed this action on October 30, 1998.

Wright, Goff and Krantz obtained actual knowledge that Vestax and Heyne allegedly "invested the assets" of the Plan "in high-risk investments" such as "junk bonds"; that Vestax and Heyne allegedly made "investment decisions that were imprudent" including "annuitizing an annuity, investing in certain limited partnerships, and purchasing both "A" and "B" shares of the same investment fund"; that Vestax and Heyne allegedly "caused" the Plan "to invest in and through companies in which the Defendants had a direct financial interest [AFA Financial]"; that Vestax and Heyne allegedly "caused" the Plan to purchase or sell assets principally for the purpose of earning transaction commissions" for themselves; and that Vestax and Heyne allegedly "paid themselves commissions on certain securities transactions in which they engaged on behalf of the [Plan]." [*See* Complaint, ¶¶ 10-13; 16]. Further, Plaintiffs were, in several instances, specifically told that Heyne had invested their funds in a manner they had specifically instructed against.

Plaintiffs obtained actual knowledge of all of those alleged facts from their own dealings with Vestax and Heyne during the period from 1992 through 1995 and from their consultations in 1993, 1994 and 1995 with four investment professionals -- Phillip Shaffer, Denny Dicky, William Cseplo and Tom Wright -- well outside the three-year limitations period established by § 1113(2). Further each of these consultants specifically and unequivocally informed

Plaintiffs of the "harmful consequences" of Vestax's and Heyne's allegedly improper acts and at least one of them (Cseplo) advised that they should "seek legal action" in early 1995. Indeed, it was based upon their actual knowledge of the foregoing material facts that all of the Plaintiffs fully terminated all of their relationships with Defendants by September 11, 1995.[3] Notwithstanding this, Plaintiffs did not file their Complaint in this case until October 30, 1998. Because they did not file their action within three years after obtaining actual knowledge of the alleged facts upon which their claims for breach of ERISA fiduciary duties are based, their claims are time-barred by 29 U.S.C. § 1113(2).

## V.  *CONCLUSION*

For the foregoing reasons, the District Court's grant of Defendants' Motion for Summary Judgment is AFFIRMED.

---

[3] Goff terminated his relationship with Defendants on March 25, 1995. Krantz terminated his relationship with them on May 2, 1995. Defendants' relationship with the Plan's general account was terminated on July 20, 1995, and on September 11, 1995, Plaintiff Wright terminated his relationship with Defendants, as well.